## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| NIKE, INC.,<br><br>                    Plaintiff,<br><br>v.<br><br>GLOBAL HEARTBREAK LLC and NAADIER RILES,<br><br>                    Defendants. | Case No. **3:24-cv-00476**<br><br>**COMPLAINT FOR:**<br><br>**(1) Trademark Infringement in Violation of 15 U.S.C. § 1114**<br><br>**(2) False Designation of Origin / Unfair Competition in Violation of 15 U.S.C. § 1125(a)**<br><br>**(3) Trademark Dilution in Violation of 15 U.S.C. § 1125(c)**<br><br>**(4) Common Law Trademark Infringement and Unfair Competition**<br><br>**(5) Trademark Infringement in Violation of N.J.S.A § 56:3-13.16**<br><br>**(6) Unfair Competition in Violation of N.J.S.A. § 56:4-1 et seq.**<br><br>**(7) Trademark Dilution in Violation of N.J.S.A. § 56:3-13.20**<br><br>**JURY TRIAL REQUESTED** |

Plaintiff Nike, Inc. ("Nike") for its Complaint against Defendants Global Heartbreak LLC and Naadier Riles (collectively, "Global Heartbreak," or "Defendants") alleges as follows:

### PRELIMINARY STATEMENT

1.        Naadier Riles, the founder of Global Heartbreak, is not an independent creator when it comes to footwear—he is a bootlegger.  Riles did not independently create his own sneaker.  Rather, he simply copied Nike's Air Jordan 1 High design and replaced Nike's branding with his own.  Riles' knockoffs bear verbatim copies of Nike's federally-registered trade dress for its Air Jordan 1 High silhouette and outsole design, as shown below:

1



| Genuine Air Jordan 1 High Sneakers | Global Heartbreak's Knockoffs |
| --- | --- |

2.       Riles does not deny that he intentionally copied Nike's Air Jordan 1 High designs. In the last month, Riles has twice admitted that he used Nike's federally-protected designs in order to gain brand recognition.  For example, on January 15, 2024, Riles admitted in an Instagram post that, despite designing apparel for seven (7) years, he "had to use a Nike silhouette to get noticed."[1]

3.       Nike became aware of Riles and Global Heartbreak on December 12, 2023, through a video published by ReasonTV, titled "Why is Nike stomping on independent creators?"[2] featuring Riles and Global Heartbreak's knockoffs.  Noticeably missing from ReasonTV's video is any mention of the law that prohibits the use of another's trademark in ways that are likely to cause confusion—precisely what Global Heartbreak is engaging in here.

4.       As ReasonTV's video demonstrated, Riles did not independently create his own sneaker.  Instead, he stole Nike's Air Jordan 1 High design and replaced Nike's branding with his

---

[1] Instagram Story from @naadyglo on January 15, 2024.
[2] *See* https://reason.com/video/2023/12/12/why-is-nike-stomping-on-independent-creators/ (last accessed January 16, 2024).

own.  Referring to Global Heartbreak's sneakers as an "independent creation" belies the graphic used in ReasonTV's video.



5.      As a trademark owner, Nike is obligated to enforce its rights against knockoffs that pose a danger to Nike's trademarks and goodwill.  Nike takes this obligation seriously, especially when it comes to its most iconic designs, such as its Air Jordan 1 High upper silhouette and outsole design.  As such, after becoming aware of Global Heartbreak, Nike promptly took action by sending Riles a cease-and-desist letter on January 3, 2024.[3]

6.      Nike tried to resolve this dispute amicably without resorting to litigation.  However, Riles' bad-faith conduct after receiving Nike's cease-and-desist letter necessitated this lawsuit.

7.      After receiving Nike's cease-and-desist letter, Riles resorted to social media in an attempt to gain as much public attention as possible from the dispute.  This included: (1) posting images of Nike's cease-and-desist letter to his Instagram, (2) illegally recording portions of Riles' call with Nike's counsel and posting the illegal recording to his Instagram, and (3) continuing to post photos of the Infringing Products.  Riles also contacted ReasonTV, resulting in, upon

---

[3] Riles' attempt to gain clout from his own infringement began weeks prior to Nike first contacting him on January 3, 2024.  For example, on December 12, 2023, Riles falsely claimed on Twitter that Nike was suing him for infringement.  *See, infra,* n.6.

information and belief, a follow-up interview that ReasonTV intends to publish in which Riles attempts to garner further sympathy for being targeted by Nike for his intentional infringement of Nike's trademarks.

8. Nevertheless, Nike continued its attempt to resolve this dispute.  Nike gave Riles additional time to provide the information Nike requested in its cease-and-desist letter.  On January 20, 2024, Riles provided this information, including the name and contact information for his manufacturer of illegal knockoffs of Nike's Air Jordan 1 design ("Andu Shoe Sue" from alibaba.com[4]), the amount of knockoffs sold, and the amount of knockoffs remaining in inventory.

9. On January 24, 2024, Nike gave Riles an opportunity to walk away from this dispute.  Specifically, Nike asked Riles to provide an assurance that he would stop using Nike's iconic designs and inform his followers that he would be discontinuing the infringing products. The same day, rather than respond to Nike's attempt to amicably resolve the dispute, Riles again took to social media and publicly threatened Nike with the release of additional infringing sneakers in a continued attempt to capitalize off of his infringement.

---

[4] Upon information and belief, the following websites are associated with Andu Shoe Sue: https://www.instagram.com/andushoesue/ & https://www.alibaba.com/product-detail/New-Children-Soccer-Boots-Kids-Boy_1600885103841.html?spm=a2700.galleryofferlist.normal_offer.d_image.14a219ceXas19r.



Instagram Story Posts from @naadyglo (Jan. 24, 2024)

10.     Defendants' conduct constitutes trademark infringement, false designation of origin, unfair competition, and trademark dilution.  And the damage to Nike from Defendants' knockoffs is considerable.  Defendants' knockoffs dilute Nike's famous Air Jordan 1 trade dress and they confuse, and are likely to confuse, consumers as to the source, origin, affiliation, and/or sponsorship of the products, especially in the post-sale environment.  In turn, Nike loses control over its brand, business reputation, and associated goodwill, which it has spent decades building.

11.     Nike cannot allow bad actors such as Defendants to confuse consumers by building a business on the back of Nike's most famous trademarks, undermining the value of those trademarks and the message they convey.  Nike therefore brings this lawsuit to stop bad actors like Defendants from making, sourcing, distributing, and selling knockoffs of Nike's products and illegally using Nike's most famous designs.

## THE PARTIES

12.     Nike is a corporation organized under the laws of the State of Oregon with a principal place of business at One Bowerman Drive, Beaverton, Oregon 97005.

13.     On information and belief, Naadier Riles is an individual residing in New Jersey.

14.     On information and belief, Naadier Riles founded and owns Global Heartbreak LLC.

15.     On information and belief, Global Heartbreak LLC is a limited liability company organized under the laws of the State of New Jersey with a principal place of business at 407B Williams St., Bound Brook, New Jersey 08805.

## JURISDICTION AND VENUE

16.     Nike brings this suit against Defendants seeking damages and injunctive relief as a result of trademark infringement under the trademark laws of the United States, namely Title 15

of the United States Code, 15 U.S.C. §§ 1114, 1125; 15 U.S.C. § 1051, et seq. ("Lanham Act") and various other federal claims.

17.    This Court has subject matter jurisdiction at least under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338 because this action arises under federal trademark law.  This Court has supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367.

18.    This Court has supplemental jurisdiction over Nike's state law claims arising under the statutory and common law of the State of New Jersey pursuant to 28 U.S.C. § 1338(b), because those claims are joined with substantial and related claims under federal law.  The Court also has subject matter jurisdiction over those claims pursuant to 28 U.S.C. § 1367 because Nike's state law claims are interrelated with Nike's federal claims and arise from a common nucleus of operative facts such that the adjudication of Nike's state law claims together with Nike's federal claims furthers the interest of judicial economy.

19.    This Court has personal jurisdiction over Defendants because, upon information and belief, Defendants are doing business in New Jersey; Defendants have contracted to supply goods in New Jersey; the claims at issue arise out of Defendants' transaction of business, including sourcing and/or supplying goods directed to consumers residing in New Jersey and this District; Defendants have committed infringing acts outside of New Jersey causing injury to Nike in New Jersey; Defendants regularly do or solicit business in New Jersey; Defendants derive substantial revenue from goods used in New Jersey; and/or Defendants expect or reasonably should expect their infringing conduct to have consequences in New Jersey and to derive substantial revenue from interstate commerce.

20.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants are transacting business in this District and have committed acts of infringement at issue in this Complaint in this District.

## FACTUAL BACKGROUND

### A.     NIKE

21.     Nike's principal business activity is the design, development, and worldwide marketing and selling of athletic footwear, apparel, equipment, accessories, and services.

22.     Nike is the largest seller of athletic footwear and apparel in the world.

23.     Nike sells its products directly to consumers through Nike-owned retail stores and digital platforms, and to retail accounts and a mix of independent distributors, licensees, and sales representatives in virtually all countries around the world.

24.     Having distinctive trademarks that are readily identifiable is an important factor in creating a market for Nike's products, in identifying Nike and its brands, and in distinguishing Nike's products from the products of others.

25.     As a result of continuous and long-standing promotion, substantial sales, and consumer recognition, Nike has developed powerful trademarks rights.

### B.     NIKE'S AIR JORDAN 1 TRADE DRESS

26.     Nike's Creative Director, Peter C. Moore, designed the Nike Air Jordan 1 for Michael Jordan in 1984 during his rookie year in the NBA.

27.     The classic and unique design of the Air Jordan 1 was unlike any sneaker previously worn by NBA players.  The NBA warned Nike that the sneakers violated its uniform rules:



28.     Nevertheless, Michael Jordan's continued use of the Air Jordan 1 provided significant publicity for the sneakers.  A few weeks after receiving the NBA's warning, Air Jordan 1 advertisements appeared on televisions all over the country.

29.     Nike released the Air Jordan 1 to consumers in 1985.  Originally released in the black and red colorway, Nike released thirteen (13) additional colorways that same year.  The classic design was unique for its time and was extremely popular with consumers, selling out immediately.

30.     While the sneakers were originally marketed in the context of basketball, its unique design made the Air Jordan 1s sought after for other sports and contexts, including as a lifestyle symbol and a fashion icon.  Today, the Air Jordan 1 continues to be recognized as having one of the most famous and influential sneaker designs of all time.

31.     Nike has registered the Air Jordan 1 High trade dress and the Air Jordan 1 Outsole Design on the Principal Register of the U.S. Patent and Trademark Office.  Nike owns all right,

title, and interest in the U.S. Trademark Registrations identified below (collectively, the "Asserted Marks").

| Reg. No. | Trademark | Reg. Date | Goods | Compl. Ex. |
|---|---|---|---|---|
| 6,368,694 |  | June 1, 2021 | Footwear | 1 |
| 3,721,064 |  | Dec. 8, 2009 | Footwear | 2 |

## C.   NIKE MAINTAINS STRICT CONTROL OVER ITS TRADEMARKS AND NIKE'S RELATED BUSINESS REPUTATION AND GOODWILL

32.   Nike maintains strict quality control standards for its products bearing the Asserted Marks.  Genuine Nike products bearing the Asserted Marks are inspected and approved by Nike prior to distribution and sale.

33.   Nike also maintains strict control over the use of the Asserted Marks in connection with its products so that Nike can maintain control over its related business reputation and goodwill.  Nike, for example, carefully determines how many products bearing the Asserted Marks are released, where the products are released, when the products are released, and how the products are released.

## D.   GLOBAL HEARTBREAK'S UNLAWFUL ACTIVITIES

34.   Global Heartbreak has wrongfully capitalized on the fame of Nike and its Asserted Marks by making, promoting, advertising, marketing, and selling in the United States footwear bearing the Asserted Marks.

35.   Global Heartbreak's Infringing Products include at least all variations of sneakers Global Heartbreak refers to as "Air Global," and any other footwear that bears the Asserted Marks

and/or confusingly similar marks.   Examples of Global Heartbreak's Infringing Products are shown below next to the Asserted Marks.

| Asserted Marks | Global Heartbreak's Infringing Products |
|---|---|
|  | |

| Asserted Marks | Global Heartbreak's Infringing Products |
|---|---|
|  | |

36.     As shown above, Global Heartbreak's Infringing Products are verbatim replicas of Nike's Asserted Marks.

37.     On information and belief, Global Heartbreak promotes and sells the Infringing Products on its website at [https://gbhtakeover.com & https://globalheartbreak.com], and on social media accounts, including Instagram [@global.heartbreak & @naadyglo] and Facebook [https://www.facebook.com/p/Globalheartbreak].

38.     Riles' intention to leverage Global Heartbreak's infringement for brand recognition was clear weeks before Nike first contacted Global Heartbreak on January 3, 2024.  For example, on December 12, 2023—three weeks prior to being contacted by Nike—Riles falsely claimed on his Twitter account that Nike was suing him and responded to one user stating that he still intended to promote and sell the Infringing Products.[5]

---

[5] *See* https://twitter.com/NaadyGlo/status/1734662639790248319 (last accessed January 16, 2024).



39.     Nike became aware of Global Heartbreak and the Infringing Products through a video published on December 12, 2023 by ReasonTV.[6]  Nike promptly sent Global Heartbreak a cease-and-desist letter on January 3, 2024 (*see* Exhibit 3), requesting that Global Heartbreak immediately stop distributing, marketing, promoting, using, offering for sale, and/or selling the Infringing Products.  *Id.*  Additionally, Nike requested information such as the number of Infringing Products sold, an accounting of Global Heartbreak's profits and revenues from its sale of the Infringing Products, the number of Infringing Products in inventory, and the identity of the manufacturer for the Infringing Products.  *Id.*

40.     Riles took to social media to complain about the letter.  For example, on January 5, 2024, Riles posted the letter to his Instagram [@naadyglo], stating "this is what I had to do to get this recognition that I deserved."

---

[6] *See* https://reason.com/video/2023/12/12/why-is-nike-stomping-on-independent-creators/ (last accessed January 16, 2024).



41.    On January 9, 2024, Riles called Nike's counsel and left a voicemail.  Riles did not

identify himself, but stated that he represented Global Heartbreak and was calling in response to

Nike's cease-and-desist letter.[7]  Nike's counsel called Riles back the same day.  During the call,

Nike explained the information it needed in order to reach an amicable resolution.  Additionally,

during Riles' call with Nike's counsel—and unbeknownst to Nike's counsel—Riles illegally[8]

recorded the conversation and later posted the illegal recording to his Instagram and Twitter

accounts.[9]

42.    Riles contacted the producer of the December 2023 ReasonTV video after receiving

Nike's January 3, 2024 cease-and-desist letter, as shown from screenshots of messages Riles

posted to his Instagram.  On information and belief, Riles participated in a follow-up interview

with ReasonTV on January 15, 2024.  Riles subsequently posted portions of his interview on his

---

[7] Riles provided Nike's counsel with a fake name during Riles' subsequent call with Nike's counsel on January 9. 2024.  Nike's counsel later learned that they were speaking with Riles when Riles posted an illegal recording of their conversation to his Instagram, as discussed below.
[8] Nike's counsel is located in Maryland. *See* Md. Code Ann., Cts. & Jud. Proc §10-402 (Under Maryland law, it is unlawful to audio record someone without the consent of all parties to the conversation).
[9] *See* https://twitter.com/NaadyGlo/status/1744811005576708535 (last accessed January 16, 2024).

social media accounts, including yet another admission that he "use[d] Nike's silhouette to get noticed." Thus, Riles twice admitted that Global Heartbreak's infringement was willful.

43.     Nevertheless, Nike continued its attempt to resolve this dispute. Nike gave Riles additional time to provide the information Nike requested in its cease-and-desist letter. On January 20, 2024, Riles provided this information, including the name and contact information for his manufacturer of illegal knockoffs of Nike's Air Jordan 1 design ("Andu Shoe Sue" from alibaba.com), the amount of knockoffs sold, and the amount of knockoffs remaining in inventory.

44.     On January 24, 2024, Nike provided Riles with an opportunity to walk away from this dispute. Specifically, Nike asked Riles to provide an assurance that he would stop using Nike's iconic designs and inform his followers that he would be discontinuing the infringing products. The same day, rather than respond to Nike's attempt to resolve the dispute amicably, Riles again took to social media and publicly threatened Nike with the release of additional infringing sneakers in a continued attempt to capitalize off of his infringement to build additional brand recognition.



Instagram Story Posts from @naadyglo (Jan. 24, 2024)

45.     Global Heartbreak's Infringing Products are not genuine Nike products.  Nike did not manufacture or inspect the Infringing Products or any component of the Infringing Products, and it did not authorize Global Heartbreak to make, promote, advertise, market, or sell the Infringing Products.

46.     Global Heartbreak's Infringing Products travel in identical channels of trade and are sold to identical consumers as Nike's genuine products.

47.     Global Heartbreak has attempted to capitalize on Nike's valuable reputation and consumer goodwill by using the Asserted Marks and/or confusingly similar marks in a manner that is likely to cause consumers and potential consumers to believe that Global Heartbreak's Infringing Products are associated with and/or approved by Nike, when they are not.

48.     Unless stopped, Global Heartbreak's Infringing Products and Global Heartbreak's use of the Asserted Marks will continue to cause confusion in the marketplace, including but not limited to initial interest confusion, post-sale confusion, and confusion in the secondary markets.

49.     On information and belief, Global Heartbreak actions alleged herein are intended to cause confusion, mistake, or deception as to the source of Global Heartbreak's Infringing Products and are intended to cause consumers and potential customers to believe that Global Heartbreak's business and products are associated with Nike, when they are not.

50.     Global Heartbreak's actions alleged herein are also likely to impair the distinctiveness of Nike's Asserted Marks through false association with Global Heartbreak, constituting dilution by blurring.

51.      By virtue of the acts complained of herein, Global Heartbreak has created a likelihood of injury to Nike's business reputation and goodwill, caused a likelihood of consumer confusion, mistake, and deception as to the source of origin or relationship of Nike's products and

Global Heartbreak's Infringing Products, and has otherwise competed unfairly by unlawfully trading on and using the Asserted Marks without Nike's permission.

52.     Global Heartbreak's actions alleged herein are also willful and deliberate, as evidenced by Riles' January 5, 2024 Instagram post stating "this is what I had to do to get this recognition that I deserved[,]" and his admission in a January 15, 2024 Instagram post that he "use[d] Nike's silhouette to get noticed."

53.     Global Heartbreak's acts complained of herein have caused damage to Nike in an amount to be determined at trial, and such damages will continue to increase unless Global Heartbreak is permanently enjoined from its wrongful acts.

54.     Global Heartbreak's acts complained of herein have caused Nike to suffer irreparable injury to its business. Nike will suffer substantial loss of goodwill and reputation unless and until Global Heartbreak is permanently enjoined from the wrongful acts complained of herein.

## COUNT I:  TRADEMARK INFRINGEMENT
## IN VIOLATION OF 15 U.S.C. § 1114

55.     Nike repeats and alleges each and every allegation of paragraphs 1 through 54, above, as though fully set forth herein.

56.     Defendants have knowingly used and continue to use in commerce, without Nike's permission or authorization, the Asserted Marks and/or confusingly similar marks, in connection with products Defendants manufacture, advertise, promote, distribute, and/or sell in the United States, including the Infringing Products.  Defendants have used the Asserted Marks with the knowledge of, and the intent to call to mind and create a likelihood of confusion with regard to and/or trade off the Asserted Marks.

57.     Defendants' use of the Asserted Marks (a) constitutes infringement of the Asserted Marks; (b) is likely to confuse, mislead, or deceive customers, purchasers, and members of the

general public as to the origin, source, sponsorship, or affiliation of Defendants or Defendants' Infringing Products with Nike or Nike's products; and (c) is likely to cause such people to believe in error that Defendants' Infringing Products have been authorized, sponsored, approved, endorsed, or licensed by Nike or that the Defendants are in some way affiliated with Nike.

58.     Nike has no control over the nature and quality of the Infringing Products offered by the Defendants, and Nike's reputation and goodwill will be damaged—and the value of the Asserted Marks jeopardized—by Defendants' continued use of the Asserted Marks and/or confusingly similar marks. Because of the likelihood of confusion between Defendants' Infringing Products and the Asserted Marks, any defects, objections, or faults found with Defendants' Infringing Products will negatively reflect upon and injure the reputation that Nike has established for the products it offers in connection with the Asserted Marks. As such, Defendants are liable to Nike for infringement of the Asserted Marks under 15 U.S.C. §1114.

59.     As a direct and proximate result of Defendants' wrongful acts, Nike has suffered, continues to suffer, and/or is likely to suffer damage to its trademarks, business reputation, and goodwill that money cannot compensate. Unless enjoined, Defendants will continue to use the Asserted Marks and/or confusingly similar marks and will cause irreparable damage to Nike for which Nike has no adequate remedy at law. Thus, Nike is entitled to an injunction restraining Defendants and, as applicable, their officers, members, agents, servants, and employees, and all persons acting in concert with them, from engaging in further acts of infringement.

60.     Nike is further entitled to recover from Defendants the actual damages Nike has sustained, is sustaining, and/or is likely to sustain as a result of Defendants' wrongful acts.

61.     Defendants' use of the Asserted Marks and/or confusingly similar marks has been intentional and willful. Defendants' bad faith is evidenced at least by the similarity of the

Infringing Products to the Asserted Marks, and by Riles' January 5, 2024 Instagram post stating "this is what I had to do to get this recognition that I deserved[,]" and his admission in a January 15, 2024 Instagram post that he "use[d] Nike's silhouette to get noticed."  Because of the willful nature of Defendants' wrongful acts, Nike is entitled to an award of treble damages and increased profits under 15 U.S.C. § 1117.

62.     Pursuant to 15 U.S.C. § 1117, Nike is also entitled to recover its costs of suit and its attorneys' fees because this is an exceptional case.

## COUNT II:  FALSE DESIGNATION OF ORIGIN /
## UNFAIR COMPETITION IN VIOLATION OF 15 U.S.C § 1125(A)

63.     Nike repeats and alleges each and every allegation of paragraphs 1 through 62, above, as though fully set forth herein.

64.     The Asserted Marks are federally registered and entitled to protection under federal and common law.  Nike has extensively and continuously promoted and used the Asserted Marks for many decades in the United States and worldwide.  Through that extensive and continuous use, the Asserted Marks have become famous and well-known indicators of the origin and quality of Nike products.

65.     Defendants' unauthorized use of the Asserted Marks and/or confusingly similar marks constitutes a false designation of origin that is likely to cause consumer confusion, mistake, or deception as to the origin, sponsorship, or approval of Defendants and/or Defendants' Infringing Products by creating the false and misleading impression that Defendants' Infringing Products are manufactured by, authorized by, or otherwise associated with Nike.

66.     As a direct and proximate result of Defendants' wrongful acts, Nike has suffered, continues to suffer, and/or is likely to suffer damage to its trademarks, business reputation, and goodwill that money cannot compensate.  Unless enjoined, Defendants will continue to use the Asserted Marks and/or confusingly similar marks and will cause irreparable damage to Nike for which Nike has no adequate remedy at law.  Thus, Nike is entitled to an injunction precluding Defendants and, as applicable, their officers, members, agents, servants, and employees, and all persons acting in concert with them, from using the Asserted Marks and/or confusingly similar marks in connection with Defendants and the promotion, marketing, offer to sell, or sale of any of the Defendants' products.

67.     Nike is further entitled to recover from Defendants the actual damages Nike has sustained, is sustaining, and/or is likely to sustain as a result of Defendants' wrongful acts.

68.     Defendants' use of the Asserted Marks and/or confusingly similar marks has been intentional and willful.  Defendants' bad faith is evidenced at least by the similarity of the Infringing Products to the Asserted Marks, and by Riles' January 5, 2024 Instagram post stating "this is what I had to do to get this recognition that I deserved[,]" and his admission in a January 15, 2024 Instagram post that he "use[d] Nike's silhouette to get noticed."  Because of the willful nature of Defendants' wrongful acts, Nike is entitled to an award of treble damages and increased profits under 15 U.S.C. § 1117.

69.     Pursuant to 15 U.S.C. § 1117, Nike is also entitled to recover its costs of suit and its attorneys' fees because this is an exceptional case.

### COUNT III:  TRADEMARK DILUTION
### IN VIOLATION OF 15 U.S.C. § 1125(C)

70.     Nike repeats and alleges each and every allegation of paragraphs 1 through 69, above, as though fully set forth herein.

71.     The Asserted Marks have become famous throughout the United States as a result of the duration, extent, and geographical reach of advertising and publicity, the amount, volume, and geographical extent of Nike's sales and trading areas, their channels of trade, their degree of recognition, and registration of the marks.

72.     The Asserted Marks became famous before the Defendants used the marks.

73.     Because Nike's products bearing the Asserted Marks have gained a reputation synonymous with fashion, quality, style, and authenticity, the Asserted Marks have gained substantial renown.  Defendants have used and continue to use in commerce the Asserted Marks or confusingly similar marks in connection with Infringing Products.

22

74.     Defendants' use of the Asserted Marks and/or confusingly similar marks has caused, continues to cause, and/or is likely to cause irreparable injury to and dilution of the distinctive quality of the Asserted Marks in violation of Nike's rights under 15 U.S.C. § 1125(c). Defendants' wrongful use of the Asserted Marks is likely to cause dilution by blurring and the whittling away of the distinctiveness and fame of the Asserted Marks.

75.     As a direct and proximate result of Defendants' wrongful acts, Nike has suffered, continues to suffer, and/or is likely to suffer damage to its trademarks, business reputation, and goodwill that money cannot compensate.  Unless restrained, Defendants will continue to use the Asserted Marks and/or confusingly similar marks and will cause irreparable damage to Nike for which Nike has no adequate remedy at law.  Thus, Nike is entitled to an injunction restraining Defendants and, as applicable, its officers, members, agents, servants, and employees, and all persons acting in concert with them, from engaging in further acts of dilution.

76.     Nike is further entitled to recover from Defendants the actual damages Nike has sustained, is sustaining, and/or is likely to sustain as a result of the Defendants' wrongful acts.

77.     Defendants' use of the Asserted Marks and/or confusingly similar marks has been intentional and willful.  Defendants' bad faith is evidenced at least by the similarity of the Infringing Products to the Asserted Marks, and by Riles' January 5, 2024 Instagram post stating "this is what I had to do to get this recognition that I deserved[,]" and his admission in a January 15, 2024 Instagram post that he "use[d] Nike's silhouette to get noticed."  Because of the willful nature of Defendants' wrongful acts, Nike is entitled to an award of treble damages and increased profits under 15 U.S.C. § 1117.

78.     Pursuant to 15 U.S.C. § 1117, Nike is also entitled to recover its costs of suit and its attorneys' fees because this is an exceptional case.

## COUNT IV:  COMMON LAW TRADEMARK INFRINGEMENT
## AND UNFAIR COMPETITION

79.     Nike repeats and alleges each and every allegation of paragraphs 1 through 78, above, as though fully set forth herein.

80.     Nike was the first to use the Asserted Marks.  As a result of Nike's continuous promotion and sales of products bearing Nike's Asserted Marks for many decades, Nike's Asserted Marks have become widely known, and Nike has been identified in the public mind as the manufacturer of the products that bear the Asserted Marks.

81.     As a result of the experience, care, and service of Nike in producing the products that bear the Asserted Marks, these products have gained a reputation synonymous with fashion, quality, style, and authenticity, the Asserted Marks have gained substantial renown.  Moreover, the Asserted Marks have come to symbolize Nike's respective reputations for quality and excellence.

82.     Defendants, with knowledge and intentional disregard of Nike's rights, continue to advertise, promote, and sell products using Nike's Asserted Marks and/or confusingly similar marks.  Defendants' acts have caused, continue to cause, and/or are likely to cause confusion as to the source and/or sponsorship of its products and Nike's products.

83.     Defendants' acts alleged herein and specifically, without limitation, Defendants' use, manufacture, promotion, distribution, offers to sell, and/or selling in the United States products that are confusingly similar to products bearing the Asserted Marks, infringe Nike's exclusive trademark rights in violation of the common law.

84.     As a direct and proximate result of Defendants' wrongful acts alleged above, Nike has suffered, continues to suffer, and/or is likely to suffer damage to its trademarks, business reputation, and goodwill that money cannot compensate.  Unless restrained, Defendants will

continue to use the Asserted Marks and/or confusingly similar marks and will cause irreparable damage to Nike for which Nike has no adequate remedy at law.  Thus, Nike is entitled to an injunction restraining Defendants and, as applicable, Defendants' other officers, members, agents, servants, and employees, and all persons acting in concert with them, from using the Asserted Marks and/or any confusingly similar marks in connection with Defendants and the promotion, marketing, offer to sell, or sale of any of the Defendants' products.

85.     Defendants' use of the Asserted Marks and/or confusingly similar marks has been intentional and willful.  Defendants' bad faith is evidenced at least by the similarity of the Infringing Products to the Asserted Marks, and by Riles' January 5, 2024 Instagram post stating "this is what I had to do to get this recognition that I deserved[,]" and his admission in a January 15, 2024 Instagram post that he "use[d] Nike's silhouette to get noticed."

**COUNT V:  TRADEMARK INFRINGEMENT
IN VIOLATION OF N.J.S.A § 56:3-13.16**

86.     Nike repeats and alleges each and every allegation of paragraphs 1 through 85, above, as though fully set forth herein.

87.     Defendants have knowingly used and continue to use in commerce, without Nike's permission or authorization, the Asserted Marks and/or confusingly similar marks, in connection with products Defendants manufacture, advertise, promote, distribute, and/or sell in the United States, including the Infringing Products.  Defendants have used the Asserted Marks with the knowledge of, and the intent to call to mind and create a likelihood of confusion with regard to and/or trade off the Asserted Marks.

88.     Defendants' use of the Asserted Marks (a) constitutes infringement of the Asserted Marks; (b) is likely to confuse, mislead, or deceive customers, purchasers, and members of the general public as to the origin, source, sponsorship, or affiliation of Defendants or Defendants'

Infringing Products with Nike or Nike's products; and (c) is likely to cause such people to believe in error that Defendants' Infringing Products have been authorized, sponsored, approved, endorsed, or licensed by Nike or that the Defendants are in some way affiliated with Nike.

89.     Nike has no control over the nature and quality of the Infringing Products offered by the Defendants, and Nike's reputation and goodwill will be damaged—and the value of the Asserted Marks jeopardized—by Defendants' continued use of the Asserted Marks and/or confusingly similar marks.  Because of the likelihood of confusion between Defendants' Infringing Products and the Asserted Marks, any defects, objections, or faults found with Defendants' Infringing Products will negatively reflect upon and injure the reputation that Nike has established for the products it offers in connection with the Asserted Marks.  As such, Defendants are liable to Nike for infringement of its registered marks under N.J.S.A § 56:3-13.16.

90.     As a direct and proximate result of Defendants' wrongful acts, Nike has suffered, continues to suffer, and/or is likely to suffer damage to its trademarks, business reputation, and goodwill that money cannot compensate.  Unless enjoined, Defendants will continue to use the Asserted Marks and/or confusingly similar marks and will cause irreparable damage to Nike for which Nike has no adequate remedy at law.  Thus, Nike is entitled to an injunction restraining Defendants and, as applicable, their officers, members, agents, servants, and employees, and all persons acting in concert with them, from engaging in further acts of infringement.

91.     Defendants have made and will continue to make substantial profits and/or gains to which it is not in law or equity entitled.  Nike is further entitled to recover from Defendants the actual damages Nike has sustained, is sustaining, and/or is likely to sustain as a result of Defendants' wrongful acts.

92.     Defendants' use of the Asserted Marks and/or confusingly similar marks has been intentional and willful.  Defendants' bad faith is evidenced at least by the similarity of the Infringing Products to the Asserted Marks, and by Riles' January 5, 2024 Instagram post stating "this is what I had to do to get this recognition that I deserved[,]" and his admission in a January 15, 2024 Instagram post that he "use[d] Nike's silhouette to get noticed."

### COUNT VI:  UNFAIR COMPETITION
### IN VIOLATION OF N.J.S.A. § 56:4-1 et seq.

93.     Nike repeats and alleges each and every allegation of paragraphs 1 through 92, above, as though fully set forth herein.

94.     The foregoing acts of Defendants constitute unfair competition in violation of N.J.S.A. § 56:4-1 et seq.

95.     Defendants have and will continue to make substantial profits and/or gains to which it is not in law or equity entitled.

96.     Defendants will continue their infringing acts unless restrained by this Court.

97.     Defendants' acts have damaged and will continue to damage Nike, and Nike has no adequate remedy at law.

98.     Defendants' use of the Asserted Marks and/or confusingly similar marks has been intentional and willful.  Defendants' bad faith is evidenced at least by the similarity of the Infringing Products to the Asserted Marks, and by Riles' January 5, 2024 Instagram post stating "this is what I had to do to get this recognition that I deserved[,]" and his admission in a January 15, 2024 Instagram post that he "use[d] Nike's silhouette to get noticed."

## COUNT VII:  TRADEMARK DILUTION
## IN VIOLATION OF N.J.S.A. § 56:3-13.20

99.     Nike repeats and alleges each and every allegation of paragraphs 1 through 98, above, as though fully set forth herein.

100.    The Asserted Marks have become famous throughout the United States as a result of the duration, extent, and geographical reach of advertising and publicity, the amount, volume, and geographical extent of Nike's sales and trading areas, their channels of trade, their degree of recognition, and registration of the marks.

101.    The Asserted Marks became famous before the Defendants used the marks.

102.    Because Nike's products bearing the Asserted Marks have gained a reputation synonymous with fashion, quality, style, and authenticity, the Asserted Marks have gained substantial renown.  Defendants have used and continue to use in commerce the Asserted Marks or confusingly similar marks in connection with Infringing Products.

103.    Defendants' use of the Asserted Marks and/or confusingly similar marks has caused, continues to cause, and/or is likely to cause irreparable injury to and dilution of the distinctive quality of the Asserted Marks in violation of Nike's rights under N.J.S.A. § 56:3-13.20. Defendants' wrongful use of the Asserted Marks is likely to cause dilution by blurring and the whittling away of the distinctiveness and fame of the Asserted Marks.

104.     As a direct and proximate result of Defendants' wrongful acts, Nike has suffered, continues to suffer, and/or is likely to suffer damage to its trademarks, business reputation, and goodwill that money cannot compensate.  Unless restrained, Defendants will continue to use the Asserted Marks and/or confusingly similar marks and will cause irreparable damage to Nike for which Nike has no adequate remedy at law.  Thus, Nike is entitled to an injunction restraining

28

Defendants and, as applicable, its officers, members, agents, servants, and employees, and all persons acting in concert with them, from engaging in further acts of dilution.

105.   Nike is further entitled to recover from Defendants the actual damages Nike has sustained, is sustaining, and/or is likely to sustain as a result of the Defendants' wrongful acts.

106.   Defendants' use of the Asserted Marks and/or confusingly similar marks has been intentional and willful.  Defendants' bad faith is evidenced at least by the similarity of the Infringing Products to the Asserted Marks, and by Riles' January 5, 2024 Instagram post stating "this is what I had to do to get this recognition that I deserved[,]" and his admission in a January 15, 2024 Instagram post that he "use[d] Nike's silhouette to get noticed."

## JURY DEMAND

107.   Pursuant to Federal Rule of Civil Procedure 38(b), Nike hereby demands a trial by jury of all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Nike respectfully prays for:

1.     A judgment and order that Defendants have willfully (A) infringed Nike's Asserted Marks in violation of 15 U.S.C. §1114 and N.J.S.A § 56:3-13.16, (B) used false designations of origin and engaged in unfair competition in violation of 15 U.S.C § 1125(a) and N.J.S.A. § 56:4-1 et seq., (C) diluted the Asserted Marks in violation of 15 U.S.C. § 1125(c) and N.J.S.A. § 56:3-13.20, and (D) violated Nike's common law rights in the Asserted Marks.

2.     A judgment and order enjoining Defendants and Defendants' affiliates, officers, agents, employees, attorneys, and all other persons acting in concert with Defendants, during the pendency of this action and permanently thereafter from:

a. Manufacturing, transporting, promoting, advertising, publicizing, distributing, offering for sale, or selling any products (including but not limited to the Infringing Products) under Nike's Asserted Marks, any marks substantially indistinguishable therefrom, or any other marks, names, symbols, or logos which are likely to cause confusion or to cause mistake or to deceive persons into the erroneous belief that any products that Defendants caused to enter the stream of commerce or any of Defendants' commercial activities are sponsored or licensed by Nike, are authorized by Nike, or are connected or affiliated in some way with Nike or Nike's Asserted Marks;

b. Manufacturing, transporting, promoting, advertising, publicizing, distributing, offering for sale, or selling any products (including but not limited to the Infringing Products) under Nike's Asserted Marks, any marks substantially indistinguishable therefrom, and/or confusingly similar marks;

c. Implying Nike's approval, endorsement, or sponsorship of, or affiliation or connection with, Defendants' products, services, or commercial activities, passing off Defendants' business as that of Nike, or engaging in any act or series of acts which, either alone or in combination, constitutes unfair methods of competition with Nike and from otherwise interfering with or injuring Nike's Asserted Marks or the goodwill associated therewith;

d. Engaging in any act which is likely to dilute the distinctive quality of the Nike Asserted Marks and/or injures Nike's business reputation; and

e. Knowingly assisting, inducing, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in paragraphs 2(a) to (d) above.

3. An order that Nike is the exclusive owner of the Asserted Marks and that such marks are valid and protectable;

4. An order that Defendants be required to deliver to Nike for destruction any and all shoes, apparel, digital files, packaging, printed graphics, promotional materials, business cards, signs, labels, advertisements, flyers, circulars, and any other items in any of their possession, custody, or control bearing Nike's Asserted Marks, any marks substantially indistinguishable therefrom, or confusingly similar marks;

5. An order granting an award of damages suffered by Nike according to proof at the time of trial;

6. An order that Defendants account to Nike for any and all profits earned as a result of Defendants' acts in violation of Nike's rights,

7. An award of three times the amount of compensatory damages and increased profits pursuant to 15 U.S.C. § 1117;

8. An award of statutory damages pursuant to 15 U.S.C. § 1117(c);

9. An order granting an award of punitive damages for the willful and wanton nature of Defendants' aforesaid acts under the common law;

10. An order granting pre-judgment interest on any recovery by Nike;

11. An order granting an award of Nike's costs, expenses, and reasonable attorneys' fees; and

12. Granting such other and further relief as is just and proper.

Dated:  January 25, 2024

ARNOLD & PORTER KAYE SCHOLER LLP

By: */s/ Aaron Stiefel*

    Christopher J. Renk (*pro hac vice* to be filed)
     Chris.Renk@arnoldporter.com
    Michael J. Harris (*pro hac vice* to be filed)
     Michael.Harris@arnoldporter.com
    ARNOLD & PORTER KAYE SCHOLER LLP
    70 West Madison Street, Suite 4200
    Chicago, Illinois 60602-4231
    Telephone: (312) 583-2300

    Bridgette C. Gershoni (*pro hac vice* to be filed)
     Bridgette.Gershoni@arnoldporter.com
    Michael J. Gershoni (*pro hac vice* to be filed)
     Michael.Gershoni@arnoldporter.com
    ARNOLD & PORTER KAYE SCHOLER LLP
    601 Massachusetts Ave. NW
    Washington, DC 20001
    Telephone: (202) 942-6745

    Aaron Stiefel (NJ ID # 013531981)
     Aaron.Stiefel@arnoldporter.com
    ARNOLD & PORTER KAYE SCHOLER LLP
    250 West 55th Street
    New York, NY  10019-9710
    Telephone: (212) 836-8442

    *Attorneys for Plaintiff Nike, Inc.*