**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| NIKE, INC., | |
|         Plaintiff, | |
|     v. | Case No. 3:24-CV-00476-MAS-RLS |
| GLOBAL HEARTBREAK LLC and NAADIER RILES, | |
|         Defendants. | |

**PLAINTIFF NIKE, INC.'S MEMORANDUM IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION .................................................................................................... 1

II.   STATEMENT OF FACTS ...................................................................................... 3

    A.   NIKE AND THE ASSERTED MARKS ..................................................... 3

    B.   GLOBAL HEARTBREAK'S UNLAWFUL ACTIVITIES .................................. 6

III.  LEGAL STANDARDS ......................................................................................... 10

    A.   DEFAULT JUDGMENT AND LIABILITY ....................................................... 10

    B.   DAMAGES .................................................................................................. 10

IV.   ARGUMENT ...................................................................................................... 12

    A.   NIKE'S MOTION FOR DEFAULT JUDGMENT SHOULD BE
        GRANTED ................................................................................................ 12

        1.   This Action Is Properly Before The Court .................................. 12

        2.   Nike Has Sufficiently Plead Its Claims ..................................... 12

        3.   Default Judgment Is Proper ....................................................... 16

    B.   NIKE IS ENTITLED TO STATUTORY DAMAGES ......................................... 17

    C.   NIKE IS ENTITLED TO A PERMANENT INJUNCTION ................................. 20

    D.   NIKE IS ENTITLED TO COSTS .................................................................. 21

V.    CONCLUSION ..................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*800–JR Cigar, Inc. v. GoTo.com, Inc.*,
  437 F.Supp.2d 273 (D.N.J.2006) ..........................................................14

*A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*,
  237 F.3d 198 (3d Cir.2000)....................................................................12

*Audi AG v. Posh Clothing, LLC*,
  No. CV 18-14254, 2019 WL 1951166 (D.N.J. May 2, 2019) ..........................18, 19

*Chanel v. Gordashevsky*,
  558 F.Supp.2d 532 (D.N.J.2008) ...................................................... *passim*

*Chanel, Inc. v. Craddock*,
  No. 05–1593, 2006 WL 1128733 (D.N.J. April 27, 2006)...............................18, 19

*Chanel, Inc. v. Matos*,
  133 F. Supp. 3d 678 (D.N.J. 2015) ...................................................10, 13

*Chanel, Inc. v. Mosseri*,
  No. 07–2619, Order (D.N.J. May 20, 2008) ...........................................18, 19

*Coach, Inc. v. Ocean Point Gifts*,
  No. CIV.A.09-4215 JBS, 2010 WL 2521444 (D.N.J. June 14, 2010).......................13, 20, 21

*Directv, Inc. v. Asher*,
  No. CIV.A. 03-1969, 2006 WL 680533 (D.N.J. Mar. 14, 2006).....................10, 16

*E.A. Sween Co. v. Deli Exp. of Tenafly*,
  LLC, 19 F. Supp. 3d 560 (D.N.J. 2014).............................................15, 16

*eBay, Inc. v. MercExchange, LLC*,
  547 U.S. 388 (2006)........................................................................20

*Hayward Indus., Inc. v. Saltwater Pool Supplies*,
  No. CV 20-6105 (KM)(ESK), 2021 WL 1940711 (D.N.J. May 14, 2021)............................10

*Louis Vuitton Malletier & Oakley, Inc. v. Veit*,
  211 F. Supp. 2d 567 (E.D. Pa. 2002) ....................................................11, 18, 19

*Louis Vuitton v. Mosseri*,
  No. 07-2620, 2009 WL 3633882 (D.N.J. Oct. 28, 2009) ..............................18, 19, 20

*Luxottica Grp., S.p.A. v. Shore Enuff*,
   No. 16-5847, 2019 WL 4027547 (D.N.J. Aug. 27, 2019) ....................................................11

*N.V.E., Inc. v. Day*,
   No. CIV. 07-4283, 2009 WL 2526744 (D.N.J. Aug. 18, 2009) ..............................................18

*Nike, Inc. and Converse Inc. v. Waskowiak et al.*,
   Case No. 3:21-cv-01068-SB (D. Or. Dec. 13, 2021) ................................................................5

*Nike, Inc. v. By Kiy LLC et al.*,
   Case No. 1:23-cv-02431 (S.D.N.Y. 2023).................................................................................5

*Nike, Inc. v. Gnarcotic LLC*,
   Case No. 2:22-cv-08765 (C.D. Cal. Jan. 5, 2023) ...................................................................5

*Nike, Inc. v. La La Land Production and Design, Inc. et al.*,
   No. 2:21-cv-00443, D.I. 102 (C.D. Cal. Apr. 20, 2022)...........................................................5

*Nike, Inc. v. Reloaded Merch LLC et al.*,
   Case No. 1:22-cv-10176-VM (S.D.N.Y. 2022) .......................................................................5

*Nike, Inc. v. USAPE LLC*,
   Case No. 1:23-cv-00660-PGG (S.D.N.Y. 2023) ......................................................................5

*Nike, Inc. v. Warren Lotas*,
   No. 2:20–cv–09431, 2020 WL 7264552 (C.D. Cal. Nov. 18, 2020).........................................4

*Platypus Wear v. Bad Boy Club, Inc.*,
   No. 08–2662, 2009 WL 2147843 (D.N.J. July 15, 2009)...........................................11, 17, 18

*Prudential Ins. Co. of America v. Taylor*,
   No. 08–2108, 2009 WL 536403 (D.N.J. February 27, 2009) ..................................................17

*Rolls-Royce Motor Cards Ltd. v. Davis*,
   No. 15-0417 (KM), 2016 WL 3913640 (D.N.J. Mar. 11, 2016) .............................................15

*Teamsters Pension Fund of Philadelphia & Vicinity v. Am. Helper, Inc.*,
   Civ. No. 11-624, 2011 WL 4729023 (D.N.J. Oct. 5, 2011).....................................................16

*Times Mirror Magazine, Inc. v. Las Vegas Sports News, LLC*,
   212 F.3d 157 (3d Cir.2000)....................................................................................................14

**Statutes**

15 U.S.C.

§ 1114(1)(a) ...................................................................................................12
§ 1116(a) ......................................................................................................20
§ 1117(a) ...................................................................................................10, 21
§ 1117(c) ...........................................................................................10, 11, 17, 19, 21
§ 1117(d) ......................................................................................................21
§ 1121 ..........................................................................................................12
§ 1125(a)(1)(A) ............................................................................................12
§ 1125(c)(2)(B) ............................................................................................14

28 U.S.C.

§ 1331 ..........................................................................................................12
§ 1338 ..........................................................................................................12
§ 1367 ..........................................................................................................12
§ 1391 ..........................................................................................................12

Lanham Act

§ 35(a) .........................................................................................................21
§ 43(a) .........................................................................................................21
§ 43(c) .........................................................................................................21
§ 43(d) .........................................................................................................21
§ 1125(c) ......................................................................................................14
§ 1125(c)(1) .................................................................................................14

Md. Code Ann., Cts. & Jud. Proc §10-402 ...................................................8

N.J.S.A.

§ 56:3–13.16 ...............................................................................................14
§ 56:3–13.20 ..........................................................................................14, 16
§ 56:4–1 ......................................................................................................14

**Other Authorities**

Fed. R. Civ. P.

55(b) .............................................................................................................3
55(b)(2) ......................................................................................................10

https://gbhtakeover.com ..............................................................................6

https://globalheartbreak.com .......................................................................6

Instagram [@global.heartbreak & @naadyglo] ...........................................6

Facebook [https://www.facebook.com/p/Globalheartbreak] ........................6

Plaintiff Nike, Inc. ("Nike") hereby respectfully submits this memorandum of law in support of its Motion for Default Judgment against Defendants Global Heartbreak LLC and Naadier Riles (collectively, the "Global Heartbreak").

## I.     INTRODUCTION

This lawsuit was necessitated by Global Heartbreak's bad-faith conduct.  In 2023 Global Heartbreak released its first sneaker—a knockoff of Nike's Air Jordan High sneaker—that bears verbatim copies of Nike's federally-registered trade dress and merely replaces Nike's branding with Global Heartbreak's own.  Declaration of Bridgette Gershoni ("Gershoni Decl.") ¶ 14; Compl. (ECF No. 1) ¶ 39.  Nike learned of Global Heartbreak through a video released by ReasonTV in December 2023 that featured Global Heartbreak and its knockoffs, and promptly took action by sending Global Heartbreak a cease-and-desist letter on January 3, 2023.  Compl. ¶ 1.

Nike hoped to resolve this dispute amicably without resorting to litigation, but Global Heartbreak's conduct made this impossible.  After receiving Nike's cease-and-desist letter, instead of engaging in good faith discussions with Nike, Global Heartbreak took to social media in an attempt to gain as much clout from this dispute as possible.  Compl. ¶ 7.  This included: (1) posting images of Nike's cease-and-desist letter to his Instagram, claiming that "this is what I had to do to get the recognition that I deserved[,]" (2) illegally recording portions of Riles' call with Nike's counsel and posting the illegal recording to his Instagram, and (3) continuing to market and sell the Infringing Sneakers.  *Id*.  Nevertheless, Nike continued its attempt to resolve this dispute and asked Global Heartbreak to provide an assurance that it would stop using Nike's iconic designs and inform its followers that Global Heartbreak would be discontinuing the Infringing Sneakers.

The same day, rather than respond to Nike's attempt to amicably resolve the dispute, Global Heartbreak again took to social media and publicly threatened Nike with the release of hundreds of additional Infringing Sneakers in a continued attempt to capitalize off of its infringement. This included posting images of the draft settlement agreement Nike provided to Global Heartbreak with text reading "I'm not signing sh*t until I get a better agreement @nike," "it'll stay blank!! I want a better offer," and "Ima keep talking until I get a better offer until then suck dick." Gershoni Decl. ¶ 8; Compl. ¶¶ 9, 44.

The next day, on January 25, 2024, Nike filed the instant action against Global Heartbreak, alleging claims of, *inter alia*, trademark infringement, false designation of origin and unfair competition, and dilution under the federal Lanham Act, and trademark infringement, unfair competition and dilution under New Jersey State law and common law, based on Global Heartbreak's violation of Nike's exclusive rights in the Nike Air Jordan 1 High trade dress (U.S. Reg. No. 6,368,694) and Air Jordan 1 Outsole design (U.S. Reg. No. 3,721,064) (collectively, the "Asserted Marks"). Gershoni Decl. ¶ 9; ECF No. 1.

Nike attempted to serve the complaint and summons on Global Heartbreak for several weeks. Gershoni Decl. ¶ 9. Nike's attempts to serve Global Heartbreak at residential addresses associated with Riles was unsuccessful. *Id*. On April 3, 2024, after months of attempting service, Nike successfully served Global Heartbreak at the Peep My Kickz Sneaker Convention in New Brunswick, New Jersey. *See* ECF No. 5. Global Heartbreak subsequently posted a video depicting Riles walking into a store with a manilla envelope in his hand, telling the cashier that "they got me." Gershoni Decl. ¶ 10.

Global Heartbreak's answer was due on March 25, 2024. ECF No. 5. As of the date of Nike's Motion for Default Judgment, Global Heartbreak has not answered or moved, and no

notices of appearances have been filed.  Gershoni Decl. ¶ 12.  On April 5, 2024, upon Nike's request, the Clerk of the Court entered default as to Global Heartbreak.  ECF No. 6.  Nike now moves, for the entry of default against Global Heartbreak pursuant to Fed. R. Civ. P. 55(b).

## II.    STATEMENT OF FACTS

### A.    NIKE AND THE ASSERTED MARKS

Nike is the largest seller of athletic footwear and apparel in the world.  Compl. ¶ 21.  Nike's principal business activity is the design, development, and worldwide marketing and selling of athletic footwear, apparel, equipment, accessories, and services.  *Id*. ¶ 20.  Having distinctive trademarks that are readily identifiable is an important factor in creating a market for Nike's products, in identifying Nike and its brands, and in distinguishing Nike's products from the products of others.  *Id*. ¶ 24.  As a result of continuous and long-standing promotion, substantial sales, and consumer recognition, Nike has developed powerful trademark rights.  *Id*. ¶ 25.

This case involves one of the most iconic and influential sneaker designs of all time—the Nike Air Jordan 1.  *Id*. ¶ 30.  The Air Jordan 1 sneaker was designed by Nike's Creative Director, Peter Moore, for Michael Jordan in 1984 during his rookie year in the NBA.  *Id*. ¶ 26.  The classic design of the Air Jordan 1 sneaker was unique for its time and extremely popular with consumers.  *Id*. ¶ 29.  While the Air Jordan 1 sneaker was originally marketed in the context of basketball, its unique design made the sneakers highly sought after for other sports and contexts, including as a lifestyle symbol and a fashion icon.  *Id*. ¶ 30.  Today, the Air Jordan 1 continues to be recognized as having one of the most famous and influential sneaker designs of all time.  *Id*.

Nike has registered the Air Jordan 1 High trade dress and the Air Jordan 1 Outsole design on the Principal Register of the U.S. Patent and Trademark Office, and owns all right, title, and interest in the U.S. Trademark Registrations identified below (the "Asserted Marks"):

| Reg. No. | Trademark | Reg. Date | Goods | Compl. Ex. |
|---|---|---|---|---|
| 6,368,694 |  Air Jordan 1 High | June 1, 2021 | Footwear | 1 |
| 3,721,064 |  Outsole Design | Dec. 8, 2009 | Footwear | 2 |

Nike has continuously and exclusively promoted and sold a wide range of goods under the Asserted Marks for many decades, representing billions of dollars' worth of sales since the sneakers' release. *See* Gershoni Decl., Ex. G. Nike maintains strict quality control standards for its products bearing the Asserted Marks. Compl. ¶ 32. Genuine Nike products being the Asserted Marks are inspected and approved by Nike prior to distribution and sale. *Id*. Nike also maintains strict quality control over the use of the Asserted Marks in connection with its products so that Nike can maintain control over its related business reputation and goodwill. *Id*. ¶ 33. Nike, for example, carefully determines how many products bearing the Asserted Marks are released, where the products are released, when the products are released, and how the products are released. *Id*.

Nike vigorously protects and defends the Asserted Marks in order to maintain the value of the Asserted Marks and ensure that consumer expectations will be met when purchasing products bearing the Asserted Marks. For example, in the last 5 years alone, Nike has filed several lawsuits in federal courts around the country to enforce its rights against parties involved in the manufacture, promotion, and/or sale of products that infringe the Asserted Marks. *See, e.g., Nike, Inc. v. Warren Lotas*, No. 2:20–cv–09431, 2020 WL 7264552, at *1 (C.D. Cal. Nov. 18, 2020) (granting Nike's Motion for a Preliminary Injunction against Warren Lotas regarding the sale of

products bearing the Outsole design); *Nike, Inc. v. La La Land Production and Design, Inc. et al.*, No. 2:21-cv-00443, D.I. 102 (C.D. Cal. Apr. 20, 2022) (entering Consent Judgment against La La Land for its manufacture of bootleg/counterfeit Air Jordan 1 sneakers); *Nike, Inc. and Converse Inc. v. Waskowiak et al.*, Case No. 3:21-cv-01068-SB (D. Or. Dec. 13, 2021) (entering Consent Judgment and Permanent Injunction against Kickrich, LLC for its sale of bootleg/counterfeit Air Jordan 1 sneakers); *Nike, Inc. v. Gnarcotic LLC*, Case No. 2:22-cv-08765 (C.D. Cal. Jan. 5, 2023) (entering Consent Judgment and Permanent Injunction against Gnarcotic for its sale of products bearing the Outsole design); *Nike, Inc. v. USAPE LLC*, Case No. 1:23-cv-00660-PGG (S.D.N.Y. 2023) (ongoing) (lawsuit against USAPE LLC regarding its sale of sneakers bearing Nike's Air Jordan 1 sneaker design); *Nike, Inc. v. By Kiy LLC et al.,* Case No. 1:23-cv-02431 (S.D.N.Y. 2023) (ongoing) (lawsuit against By Kiy LLC and Nickwon Arvinger regarding their sale of sneakers bearing Nike's Air Jordan 1 and Outsole designs); *Nike, Inc. v. Reloaded Merch LLC et al.*, Case No. 1:22-cv-10176-VM (S.D.N.Y. 2022) (ongoing) (lawsuit against Reloaded and Bill Omar Carrasquillo regarding the sale of sneakers bearing Nike's Air Jordan 1 High trade dress and Outsole design).  As explained in the Complaint, Nike's extensive enforcement efforts ensure that Nike's designs and intellectual property are protected from bad actors, like Global Heartbreak, who undermine the very DNA of sneaker culture by promoting, copying, and selling Nike's designs as their own, and is necessary to deter future bad actors from repeating the same unlawful conduct.  Compl. ¶¶ 10-11.

The damage to Nike from knockoffs like those sold by Global Heartbreak is considerable. Global Heartbreaks' knockoffs dilute the Asserted Marks and they confuse consumers as to the source, origin, affiliation, and/or sponsorship of the products, especially in the post-sale

environment.  Compl. ¶ 10.  In turn, Nike loses control over its brand, business reputation, and associated goodwill, which it has spent decades building.  *Id*.

### B.     GLOBAL HEARTBREAK'S UNLAWFUL ACTIVITIES

Global Heartbreak has wrongfully capitalized on the fame of Nike and the Asserted Marks by making, promoting, advertising, marketing, and selling in the United States sneakers bearing the Asserted Marks.  Global Heartbreak's products (the "Infringing Sneakers") bear verbatim copies of Nike's Asserted Marks, as shown below.[1]



| Asserted Marks | Example Infringing Sneakers |
|---|---|

Global Heartbreak promotes and sells the Infringing Sneakers on its website at [https://gbhtakeover.com  &  https://globalheartbreak.com], and on social media accounts, including      Instagram      [@global.heartbreak      &      @naadyglo]      and      Facebook [https://www.facebook.com/p/Globalheartbreak].  Compl. ¶ 37.  Upon information and belief, Global Heartbreak first released the Infringing Sneakers in 2023, which it sells for $180.00 per pair.  *See* Gershoni Decl. Ex. F.

---

[1] In addition to the red colorway shown above, Global Heartbreak sold at least three additional colorways:  Pink, Green, and Blue.  *See* Gershoni Decl. ¶ 15.

Nike became aware of Global Heartbreak on December 12, 2023 through a video published by ReasonTV, featuring Global Heartbreak and its knockoff Air Jordan 1 sneakers.  Compl. ¶ 3. As ReasonTV's video demonstrated, Global Heartbreak did not independently create its own sneaker.  Instead, it stole Nike's design and replaced Nike's branding with its own, as shown by the below graphic used in ReasonTV's video.



Compl. ¶ 4.

As a trademark owner, Nike is obligated to enforce its rights against knockoffs that pose a danger to Nike's trademarks and goodwill.  *Id*. ¶ 5.  As such, after becoming aware of Global Heartbreak, Nike promptly took action by sending Global Heartbreak a cease-and-desist letter on January 3, 2024.  *See* Compl., Ex. 3.  After receiving Nike's cease-and-desist letter, Global Heartbreak resorted to social media in an attempt to gain as much public attention as possible from the dispute.  For example, on January 5, 2024, Riles posted the letter to his Instagram [@naadyglo], stating "this is what I had to do to get this recognition that I deserved."  Compl. ¶ 40, Gershoni Decl. Ex. A.  Shortly thereafter, Riles posted a clip from a follow-up interview he solicited from ReasonTV, wherein he again admitted that he "use[d] Nike's silhouette to get noticed."  Compl. ¶ 42; Gershoni Decl. ¶ 5; *id*., Ex. B.  Thus, Riles twice publicly admitted that Global Heartbreak's infringement was willful.

On January 9, 2024, Riles called Nike's counsel and left a voicemail.  Compl. ¶ 41.  Riles did not identify himself, but stated that he represented Global Heartbreak and was calling in response to Nike's cease-and-desist letter.[2]  Gershoni Decl. ¶ 4.  Nike's counsel called Riles back the same day.  *Id*.  During the call, Nike explained the information it needed in order to reach an amicable resolution.  *Id*.  Additionally, during Riles' call with Nike's counsel—and unbeknownst to Nike's counsel—Riles illegally[3] recorded the conversation and later posted the illegal recording to his Instagram and Twitter accounts.  *Id*.

Nevertheless, Nike continued its attempt to resolve this dispute.  Nike gave Riles additional time to provide the information Nike requested in its cease-and-desist letter.  Compl. ¶ 43; Gershoni Decl. ¶ 6.  Despite Nike's request to immediately cease-and-desist sales of the Infringing Sneakers, Riles asserted that "the shoes in [Global Heartbreak's] possession will be sold."  *Id*.

On January 24, 2024, Nike provided Riles with yet another opportunity to walk away from this dispute. Compl. ¶ 43; Gershoni Decl. ¶ 7.  Specifically, Nike asked Riles to provide an assurance that he would stop using Nike's iconic designs and inform his followers that he would be discontinuing the Infringing Sneakers.  *Id*.  Additionally, Nike informed Riles that it would allow a sell-off period and sent a settlement agreement that memorialized these terms.  *Id*.

The same day, rather than respond to Nike's attempt to resolve the dispute amicably, Riles again took to social media, posting screenshots of the settlement agreement and publicly threatening Nike with the release of additional Infringing Sneakers in a continued attempt to

---

[2] Riles provided Nike's counsel with a fake name during Riles' subsequent call with Nike's counsel on January 9, 2024.  *See* Compl. ¶ 41, Gershoni Decl. ¶ 6.  Nike's counsel later learned that they were speaking with Riles when Riles posted an illegal recording of their conversation to his Instagram and Twitter accounts, as discussed herein.  *Id*.

[3] Nike's counsel is located in Maryland. See Md. Code Ann., Cts. & Jud. Proc §10-402 (Under Maryland law, it is unlawful to audio record someone without the consent of all parties to the conversation).

capitalize off of his infringement to build additional brand recognition.  Compl. ¶ 44; Gershoni

Decl. ¶ 8.  These threats and comments included: (1) "I'm not signing sh*t until I get a better

agreement @nike," (2) "It'll stay blank!! I want a better offer," (3) "I'll drop 100 more" (referring

to an image of the Infringing Sneakers), and (4) "Ima keep talking until I get a better offer until

then suck dick."  *Id*.

        Nike filed the Complaint in this action the next day, on January 25, 2024.  ECF No. 1.

Nike attempted to serve the Complaint and Summons on Global Heartbreak for several weeks,

using two residential addresses associated with Riles.  Gershoni Decl. ¶ 9.  These attempts were

unsuccessful, as, upon information and belief, Riles was evading service attempts.  *Id*.  During this

time, Global Heartbreak continued to sell and advertise the Infringing Sneakers, and posted a

message to Twitter that, "despite facing a lawsuit from a billion-dollar company," Global

Heartbreak "stand[s] firm in our values and will continue to share our journey, undeterred by

obstacles."[4]  Gershoni Decl., Ex. E.

        In late February 2024, Global Heartbreak announced that it would be selling the Infringing

Sneakers at the upcoming Peep My Kickz Sneaker Convention in New Brunswick, New Jersey.

Gershoni Decl. ¶ 10.  Nike successfully served the Complaint and Summons on Riles and Global

at the sneaker convention on March 3, 2024.  ECF No. 5; Gershoni Decl. ¶ 10.  Thereafter, Global

Heartbreak produced and posted a video wherein Riles enters a store holding a manilla envelope,

which he passes to the cashier while saying "they got me."  Gershoni Decl. ¶ 10.

---

[4] Despite Riles' actions up until this point, Nike was still willing to amicably resolve this dispute, and sent Riles a settlement proposal on February 22, 2024.  Gershoni Decl. ¶ 13.  Riles never responded.  *Id.*

III.   **LEGAL STANDARDS**

A.   **DEFAULT JUDGMENT AND LIABILITY**

"Federal Rule of Civil Procedure 55(b)(2) authorizes courts to enter a default judgment against a properly served defendant who fails to a file a timely responsive pleading." *Chanel v. Gordashevsky,* 558 F.Supp.2d 532, 535 (D.N.J.2008).  "A defendant is deemed to have admitted the factual allegations of the Complaint by virtue of his default, except those factual allegations related to the amount of damages." *Directv, Inc. v. Asher*, No. CIV.A. 03-1969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006).  Before entering a judgment of default, a court must determine: "(1) whether the plaintiff produced sufficient proof of valid service and evidence of jurisdiction, (2) whether the unchallenged facts present a legitimate cause of action, and (3) whether the circumstances otherwise render the entry of default judgment 'proper.'" *Chanel, Inc. v. Matos*, 133 F. Supp. 3d 678, 683 (D.N.J. 2015).  In determining whether the circumstances render the entry of default judgment "proper," courts in this district consider  (1) whether there would be prejudice to the plaintiff if no default judgment was entered; (2) whether a meritorious defense has been asserted by the defendant; and (3) whether the default was willfully caused by the defendant. *Directv*, *Inc.*, 2006 WL 680533, at *1.

B.   **DAMAGES**

When a plaintiff establishes a violation of its trademarks, it is entitled to recover damages measured by the defendant's profits. 15 U.S.C. § 1117(a).  Alternatively, a plaintiff may elect to recover statutory damages pursuant to 15 U.S.C. § 1117(c).

Courts in this district have held that statutory damages are "particularly appropriate where, as here, the defendant's failure to respond has made it difficult or impossible for the plaintiff to demonstrate its actual damages." *Hayward Indus., Inc. v. Saltwater Pool Supplies*, No. CV 20-

6105 (KM)(ESK), 2021 WL 1940711, at *12 (D.N.J. May 14, 2021).  Statutory damages are available in an amount of $1000 to $200,000 per counterfeit mark, or type of good or service sold. In the case of willful infringement, the court may impose damages of "not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed." 15 U.S.C. § 1117(c). "Such willful conduct must have included an 'aura of indifference to plaintiff's rights' or a 'deliberate and unnecessary duplicating of a plaintiff's mark ... calculated to appropriate or otherwise benefit from the good will the plaintiff had nurtured." *Luxottica Grp., S.p.A. v. Shore Enuff*, No. 16-5847, 2019 WL 4027547, at *6 (D.N.J. Aug. 27, 2019) (citations removed).

"In the absence of clear guidelines for setting a statutory damage award, courts tend to use their wide discretion to compensate plaintiffs, as well as to deter and punish defendants, often borrowing from factors developed in fixing a statutory damage award for copyright infringement." *Louis Vuitton Malletier & Oakley, Inc. v. Veit*, 211 F. Supp. 2d 567, 583 (E.D. Pa. 2002).  These factors include: "(1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the copyright; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant." *Platypus Wear v. Bad Boy Club, Inc.*, No. 08–2662, 2009 WL 2147843, at *6 (D.N.J. July 15, 2009).  A hearing is not required when statutory damages are involved "because the very purpose of statutory damages is to provide the plaintiff with relief when damages are not assessable due to the defendant's conduct." *Id*.

11

## IV.      ARGUMENT

### A.      NIKE'S MOTION FOR DEFAULT JUDGMENT SHOULD BE GRANTED

#### 1.      This Action Is Properly Before The Court

This Court has subject matter jurisdiction over Global Heartbreak at least under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338 because this action arises under federal trademark law, and supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367. *See* Compl. ¶¶ 17-18.   Additionally, this Court has personal jurisdiction over Global Heartbreak because Global Heartbreak is doing business in New Jersey; have contracted to supply goods in New Jersey; the claims at issue arise out of their transaction of business, including sourcing and/or supplying goods directed to consumers residing in New Jersey and this district; have committed infringing acts outside of New Jersey causing injury to Nike in New Jersey; regularly do or solicit business in New Jersey; derive substantial revenue from goods used in New Jersey; and/or expect or reasonably should expect their infringing conduct to have consequences in New Jersey and derive substantial revenue from interstate commerce. *Id*. ¶ 19.

Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Global Heartbreak is transacting business in this District and have committed acts of infringement at issue in this Complaint in this District. *Id*. ¶ 20.  Finally, Nike properly served the Complaint and Summons on Global Heartbreak on March 3, 2024.  *See* ECF No. 5.

#### 2.      Nike Has Sufficiently Plead Its Claims

Trademark infringement & false designation of origin/unfair competition:   "Federal trademark infringement, 15 U.S.C. § 1114(1)(a), and a false designation of origin claim, 15 U.S.C. § 1125(a)(1)(A), are measured by identical standards pursuant to the Lanham Act." *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 536 (D.N.J. 2008) (citing *A & H Sportswear, Inc. v.*

*Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir.2000)).  To establish either claim, the record must demonstrate that (1) plaintiff has a valid and legally protectable mark; (2) plaintiff owns the mark; and (3) the defendant's use of the mark to identify goods or services causes a likelihood of confusion.  *Id.*  Nike has met these requirements here.

The record in this case readily establishes the first two requirements, validity and legal protectability.  Specifically, "the certificates of registration issued by the United States Patent and Trademark Office (hereinafter, the 'USPTO') for the [Asserted] Marks demonstrate, on their face, the validity and protectability of the Marks, as well as [Nike's] ownership." *Chanel, Inc. v. Matos*, 133 F. Supp. 3d 678, 685 (D.N.J. 2015).  The Certificates of Registration for the Asserted Marks are attached to the Complaint as Exhibits 1-2.  *See* ECF Nos. 1-1, 1-2.

The third element, likelihood of confusion, is also met.  Where "the trademark owner and the alleged infringer deal in competing goods or services," as here, "the court need rarely look beyond the mark itself." *Chanel*, 113 F. Supp. 3d at 687 (citations omitted).  In other words, the analysis turns upon whether the marks are "confusingly similar." *Id.*  Here, even a cursory inspection of the Infringing Sneakers leads to an inescapable conclusion that the Infringing Sneakers bear far more than a confusingly similarity to the Asserted Marks—they bear verbatim copies of the Asserted Marks. *See supra*, Section II.B.  "The identity of the marks, in turn, creates a likelihood of confusion, and indeed makes such confusion inevitable." *Chanel*, 113 F. Supp. 3d at 687 (finding likelihood of confusion established where marks were identical).

Because Nike has sufficiently alleged liability for its federal Lanham Act claims of unfair competition and trademark infringement, such "liability under federal law [is] sufficient to establish liability under [New Jersey] state law." *Coach, Inc. v. Ocean Point Gifts*, No. CIV.A.09-4215 JBS, 2010 WL 2521444, at *4 (D.N.J. June 14, 2010) (holding that, because the plaintiffs

13

had established liability for their federal Lanham Act claims, it had also established liability pursuant to N.J.S.A. § 56:4–1 [unfair competition] and § 56:3–13.16 [trademark infringement]).

Thus, Nike has sufficiently alleged its claims for trademark infringement (Counts I, IV, and V) and unfair competition (Counts II, IV, and VI).

Dilution:  Nike's third claim for dilution pursuant to Section 1125(c) of the Lanham Act, and seventh claim for dilution pursuant to N.J.S.A. § 56:3-13.20, relate to dilution by blurring, which is defined as "association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark." 15 U.S.C. § 1125(c)(2)(B).  To establish trademark dilution under the Lanham Act[5] a plaintiff must prove: (1) the plaintiff is the owner of a mark that qualifies as a famous mark in light of the totality of the factors[6] listed in § 1125(c)(1); (2) the defendant is making commercial use in interstate commerce of a mark or trade name; (3) defendant's use began after the plaintiff's mark became famous; and (4) defendant's use causes dilution by lessening the capacity of the plaintiff's mark to identify and distinguish goods or services.  *Times Mirror Magazine, Inc. v. Las Vegas Sports News, LLC*, 212 F.3d 157, 163 (3d Cir.2000).

---

[5] Similar to New Jersey's trademark infringement and unfair competition/false designation of origin claims, courts in this district have found dilution liability under federal law to be sufficient to establish liability under New Jersey state law.  *See 800–JR Cigar, Inc. v. GoTo.com, Inc.*, 437 F.Supp.2d 273, 294 (D.N.J.2006) ("Dilution claims under New Jersey law are subject to the same considerations as federal dilution claims.").

[6] The Third Circuit has considered the following factors when determining whether a mark is distinctive or famous: (A) the degree of inherent or acquired distinctiveness of the mark; (B) the duration and extent of use of the mark in connection with the goods or services with which the mark is used; (C) the duration and extent of advertising and publicity of the mark; (D) the geographical extent of the trading area in which the mark is used; (E) the channels of trade for the goods or services with which the mark is used; (F) the degree of recognition of the mark in the trading areas and channels of trade used by the marks' owner and the person against whom the injunction is sought; (G) the nature and extent of use of the same or similar marks by third parties. *Id*.

Nike has sufficiently alleged all of these elements.  First, Nike has established that the Asserted Marks are distinctive as evidenced by Nike's federal registrations, and pleaded the fame and widespread recognition of the Asserted Marks in the Complaint.  *See* Compl. ¶¶ 11, 30, 64, 71, 100.  As explained in the Complaint, today the Air Jordan 1 sneakers continue to be recognized as having one of the most famous and influential sneaker designs of all time.  *Id*. ¶ 30.  Nike's well-plead allegations in the Complaint are thus sufficient to find that the marks are famous within the meaning of the Lanham Act.  *See Rolls-Royce Motor Cards Ltd. v. Davis*, No. 15-0417 (KM), 2016 WL 3913640, at *8 (D.N.J. Mar. 11, 2016).

Second, Nike alleged that Global Heartbreak promotes and sells the Infringing Sneakers on its website and social media accounts (*id*. ¶ 37), and "[t]hese activities, by their very nature, involve interstate commerce." *Rolls-Royce*, 2016 WL 3913640, at *8 (finding interstate commerce element met where plaintiff alleged that defendant sold the infringing products in his online store). Further, Nike has made a significant showing that the Asserted Marks have gained substantial nationwide renown (*e.g.,* Compl. ¶ 73), are federally registered (*id*. ¶ 31), and Global Heartbreak's unlawful use of the Asserted Marks has and will continue to dilute the distinctive quality of the Asserted Marks.  *See id.* ¶ 74.  "An erosion of [those] mark[s], even if local in nature, will thus affect interstate commerce."  *E.A. Sween Co. v. Deli Exp. of Tenafly*, LLC, 19 F. Supp. 3d 560, 574 (D.N.J. 2014).

Third, Global Heartbreak began using the Asserted Marks after they became famous.  *See* Compl. ¶ 72.  As the record reflects, Global Heartbreak did not begin using the Asserted Marks until 2023 (Gershoni Decl. ¶ 15), decades after the release of the Air Jordan 1 sneakers in 1984. Compl. ¶ 26.  Lastly, the fourth element is met by the fact that Global Heartbreak uses verbatim copies of the Asserted Marks to promote and sell the same types of products (sneakers) promoted

and sold under the Asserted Marks.  *E.A. Sween Co.*, 19 F. Supp. 3d at 574 (finding the fourth

element met "from the fact that Defendant has used [plaintiff's] exact marks to promote and sell

the same sort of food products promoted and sold under the [Asserted] marks."). Accordingly,

Nike has sufficiently alleged its claims for trademark dilution in violation of the Lanham Act and

N.J.S.A. § 56:3-13.20. (Counts III & VII).

### 3.    Default Judgment Is Proper

In determining whether the entry of default judgment is "proper," courts in this district

consider: (1) whether there would be prejudice to the plaintiff if no default judgment was entered;

(2) whether a meritorious defense has been asserted by the defendant; and (3) whether the default

was willfully caused by the defendant.  *Directv, Inc.*, 2006 WL 680533, at *1.  All three factors

weigh in favor of entering default judgment against Global Heartbreak.

Factor 1 (Prejudice):  This factor is met because Nike would suffer prejudice if default

judgment were denied.  Global Heartbreak was properly served, yet failed to appear or defend

itself in any matter.   As such, Nike has "been prevented from prosecuting [its] case, engaging in

discovery, and seeking relief in the normal fashion[…][d]efendant was properly served, yet failed

to appear or defend themselves in any fashion."  *See Teamsters Pension Fund of Philadelphia &*

*Vicinity v. Am. Helper, Inc.*, Civ. No. 11-624, 2011 WL 4729023, at *4 (D.N.J. Oct. 5, 2011).

Factor 2 (Meritorious Defense):  This factor is met because the record does not show any

meritorious defenses.  Because Global Heartbreak did not respond, neither Nike nor the Court can

determine whether Global Heartbreak had meritorious defenses that are not reflected in the record.

*Id.* (holding that, because the defendant did not respond, "the Court cannot determine whether the

Defendant had meritorious defenses that are not reflected in the record [,] [t]he Court therefore

finds that Defendants have no meritorious defense.").

Factor 3 (Culpability):  This factor is likewise met by virtue of Global Heartbreak's failure to appear in this matter and/or respond to the Complaint. *See Prudential Ins. Co. of America v. Taylor*, No. 08–2108, 2009 WL 536403 at *1 (D.N.J. February 27, 2009) (finding that when there is nothing before the court to suggest anything other than the defendant's willful negligence caused the defendant to fail to file an answer, the defendant's conduct is culpable and warrants default judgment).

Thus, entry of default judgment against Global Heartbreak is proper.

## B.    NIKE IS ENTITLED TO STATUTORY DAMAGES

Nike is entitled to a damages award of $4 million pursuant to Section 1117(c) of the Lanham Act.[7]  The Lanham Act provides that, where the defendants' conduct is willful, the court may award the plaintiff statutory damages of up to $2,000,000 per "mark per type of goods and services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c).  In order for plaintiff to receive the maximum amount of damages, defendants' willful conduct must have included "an aura of indifference to plaintiff's rights" or a "deliberate and unnecessary duplicating of a plaintiff's mark ... in a way that was calculated to appropriate or otherwise benefit from the good will the plaintiff had nurtured." *Chanel*, 558 F.Supp.2d at 538.  "In the absence of clear guidelines for setting a statutory damage award, courts tend to use their wide discretion to compensate plaintiffs, as well as to deter and punish defendants, often borrowing from factors developed in fixing a statutory damage award for copyright infringement." *Platypus Wear,* 2009 WL 2147843, at *6 (citations omitted).  These factors include: (1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the trademark; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful;

---

[7] Nike reserved the right to seek statutory damages in the Complaint.  *See* Compl. at 31, ¶ 8.

(6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant. *Id*. Here, all relevant factors strongly favor a significant statutory damages award.

Factors 1-2:   Because Global Heartbreak refused to participate in this case, there is no evidence of the volume of sales for the Infringing Sneakers.  However, courts have found that "the point of sale is very relevant to the statutory damages discussion," *Veit*, 211 F. Supp. 2d at 584, and noted that "the proliferation of counterfeit marks on the Internet to a nearly limitless audience of consumers significantly increases the likelihood of consumer confusion." *N.V.E., Inc. v. Day*, No. CIV. 07-4283, 2009 WL 2526744 (D.N.J. Aug. 18, 2009).  The Infringing Sneakers were sold and marketed on Global Heartbreak's website and social media channels, and "given the scope of the internet supermarket, such sale offerings are presumptively quite high and proscribed by the Lanham Act." *Id*.  Consequently, courts encountering the pervasive effects of Internet sales of infringing products have ordered larger statutory damages awards. *E.g., Chanel, Inc. v. Craddock*, No. 05–1593, 2006 WL 1128733, at *1 (D.N.J. April 27, 2006) (awarding $8.1 million total); *Louis Vuitton v. Mosseri*, No. 07-2620, 2009 WL 3633882, at *3 (D.N.J. Oct. 28, 2009) (awarding $4 million total); *Chanel, Inc. v. Mosseri,* No. 07–2619, Order at 2 (D.N.J. May 20, 2008) (awarding $3.8 million total); *Audi AG v. Posh Clothing, LLC,* No. CV 18-14254, 2019 WL 1951166, at *6 (D.N.J. May 2, 2019) (awarding $3 million total); *Chanel*, 558 F.Supp.2d at 538 (awarding $2.2 million total); *Veit*, 211 F.Supp.2d at 584–85 (awarding $1.5 million total).

Factors 3-7:   As explained above, Global Heartbreak's egregious and willful conduct warrants a significant statutory damages award.  *See supra*, Section II.B.  Indeed, Global Heartbreak purposely stole Nike's iconic Air Jordan 1 High design to, in its own words, "get the recognition that [Global Heartbreak] deserved." *Id*.  When Nike offered an amicable solution short

of litigation via an agreement to stop using its marks, Global Heartbreak publicly told Nike to "suck dick." *Id.*   And even after this lawsuit was filed, Global Heartbreak continued to market and sell the Infringing Sneakers.  *Veit*, 211 F.Supp.2d at 583 ("Willfulness can be inferred by the fact that a defendant continued infringing behavior after being given notice.").

Further, as explained above, the Asserted Marks are incredibly valuable to Nike, who has continuously and exclusively sold products bearing these designs for decades, accounting for millions of sales each year.  *See supra*, Section II.A.  Moreover, as explained above and in the Complaint, Nike extensively enforces its rights in the Asserted Marks in order to, *inter alia*, deter others from bootlegging its most iconic products.  *Id.*; Compl. ¶¶ 10-11.  A significant award is necessary here to deter others from intentionally using Nike's intellectual property in hopes of using Nike's enforcement as a mechanism to gain attention and, in turn, increase sales of infringing goods.  A significant statutory damages award is also necessary to discourage Global Heartbreak from bootlegging other iconic Nike styles that may not be covered by the [proposed] Default Judgment Order, which is limited to the Asserted Marks at issue in this case.

Because there are two (2) Asserted Marks at issue in this case, an award of $2 million per mark is consistent with the language of the Lanham Act, especially given the weight of the above factors and Global Heartbreak's egregious and willful conduct.  15 U.S.C. § 1117(c).  This award is further supported by other cases from this district involving willful infringement and internet sales.  *See Craddock*, 2006 WL 1128733, at *1 (awarding $8.1 million total); *Louis Vuitton*, 2009 WL 3633882, at *3 (awarding $4 million total); *Chanel*, No. 07–2619, Order at 2 (awarding $3.8 million total); *Audi AG*, 2019 WL 1951166, at *6 (awarding $3 million total); *Mosseri*, 558 F.Supp.2d at 538 (awarding $2.2 million total); *Veit*, 211 F.Supp.2d at 584–85 (awarding $1.5 million total).

### C.      NIKE IS ENTITLED TO A PERMANENT INJUNCTION

A plaintiff seeking a permanent injunction must show: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006) (citations omitted). The Court may issue a permanent injunction in the context of a default judgment where these requirements are met. *See Coach*, 2010 WL 2521444, at *10. Here, all of these factors weigh in favor of issuing a permanent injunction.

As explained above, Nike has established a likelihood of confusion (*see supra*, Section IV.A.2), and thus irreparable harm is presumed. *See* 15 U.S.C. § 1116(a) (Under the Trademark Modernization Act of 2020, a plaintiff seeking injunctive relief is entitled to a rebuttable presumption of irreparable harm upon a finding of a violation); *Louis Vuitton*, 2009 WL 3633882, at *5. Further, "monetary relief alone will not adequately compensate [Nike] for the reputational injury inflicted or deter future trademark infringement by [Global Heartbreak]." *Id*. Global Heartbreak has not presented any equitable defenses, and the balance of equities weigh in favor of injunctive relief. Global Heartbreak deliberately infringed Nike's Asserted Marks by advertising and selling the Infringing Sneakers bearing duplicates of those marks on the Internet, and "[t]his misconduct harms [Nike's] business reputation and impairs the public interest in preventing consumer confusion and deception in the marketplace." *Id*. Lastly, "the issuance of an injunction would cause [Global Heartbreak] no undue hardship, because an injunction will merely require [Global Heartbreak] to comply with the Lanham Act." *Id*. (citations omitted). Thus, each of these elements weighs in favor of Nike.

### D.    NIKE IS ENTITLED TO COSTS

In addition to statutory damages, the costs of actions brought under § 43(a), § 43(d), or a willful violation under § 43(c) of the Lanham Act (codified at 15 U.S.C. § 1117(a), (d), & (c), respectively) can be recovered pursuant to § 35(a) (codified at 15 U.S.C. § 1117(a)).  *See Ocean Point Gifts*, 2010 WL 2521444, at *8.  Because this case involves the culpable conduct of, *inter alia*, continuing to sell goods after the Complaint was received, Nike is entitled to reasonable costs associated with this matter.  *Id.*

Here, in addition to statutory damages, Nike seeks to recover costs in the amount of $2,930, which represents: (i) the costs associated with the multiple service attempts by the process server and the skip-trace performed by the process server ($2,525, *see* Gershoni Decl. ¶ 11), and the costs of filing this action ($405, *see* ECF No. 1).

## V.    CONCLUSION

Nike respectfully requests that the Court enter default judgment against Global Heartbreak, award statutory damages in the amount of $4 million dollars, award costs in the amount of $2,930, and enter a permanent injunction order prohibiting the Global Heartbreak from selling Infringing Sneakers or continuing its use of the Asserted Marks.

Dated:  April 17, 2024                    ARNOLD & PORTER KAYE SCHOLER LLP

By:  */s/ Aaron Stiefel*

   Christopher J. Renk (*pro hac vice* to be filed)
     Chris.Renk@arnoldporter.com
   Michael J. Harris (*pro hac vice* to be filed)
     Michael.Harris@arnoldporter.com
   ARNOLD & PORTER KAYE SCHOLER LLP
   70 West Madison Street, Suite 4200
   Chicago, Illinois 60602-4231
   Telephone: (312) 583-2300

Bridgette C. Gershoni (*pro hac vice* to be filed)
  Bridgette.Gershoni@arnoldporter.com
Michael J. Gershoni (*pro hac vice* to be filed)
  Michael.Gershoni@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave. NW
Washington, DC 20001
Telephone: (202) 942-6745

Aaron Stiefel (NJ ID # 013531981)
  Aaron.Stiefel@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY  10019-9710
Telephone: (212) 836-8442

*Attorneys for Plaintiff Nike, Inc.*